IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON MICHAEL SIEMER,<br><br>Defendant. | 4:18CR3159<br><br>INDICTMENT<br>18 U.S.C. §1343<br>18 U.S.C. § 1014<br>18 U.S.C. § 1957 and<br>18 U.S.C. §2 |

The Grand Jury charges:

## INTRODUCTION

1. Between on or about September 1, 2014, and December, 31, 2016, in the District of Nebraska, and elsewhere, JASON MICHAEL SIEMER, defendant herein, devised and intended to devise a scheme to defraud and to obtain money and property from Eide Wholesale, LLC (hereinafter "Eide"), Automotive Capital Services, Inc. (hereinafter "ACS"), Westlake Flooring Company, LLC (hereinafter "Westlake"), and the United Republic Bank in Omaha, Nebraska (hereinafter "URB"), by means of materially false and fraudulent pretenses, representations and promises.

2. JASON MICHAEL SIEMER was the sole owner and operator of Siemer Auto Center, LLC for approximately nine years until the company dissolved and ceased operating in December, 2016. The business's primary place of operation at the time that it closed was in Dodge County, Nebraska.

3. JASON MICHAEL SIEMER operated his company primarily by bidding on vehicles at auctions, and then reselling those vehicles to his customers. The purchase money for the vehicles at auction was obtained through financing known as floor plan lending that Siemer sought out and obtained from companies which included Eide, ACS, Westlake, and URB, a

1

financial institution whose deposits were insured by the Federal Deposit Insurance Corporation. Floor plan lending is a type of short-term lending used by businesses to purchase higher cost and marketable inventory, such as vehicles. Floor plan lenders make loans to companies such as SIEMER AUTO CENTER, LLC to purportedly fund the purchase of specific used vehicles. These vehicles were then expected to be sold by companies such as SIEMER AUTO CENTER, LLC in order to repay the floor plan loans made by the floor plan lender to companies such as SIEMER AUTO CENTER, LLC.

4. As part of the process of obtaining floor plan lending through lines of credit from ACS Westlake and URB, JASON MICHAEL SIEMER was required to submit financial statements that included an accurate accounting of the existing liabilities and assets for himself and for Siemer Auto Center, LLC so that the companies could make a determination of whether to approve or renew the lines of credit for Siemer Auto Center, LLC. The information on the financial statements was material to ACS, Westlake and URB in their decision whether to approve or renew floor plan lines of credit to Siemer Auto Center, LLC. It was part of the scheme that JASON MICHAEL SIEMER would intentionally fail to disclose his floor plan line of credit with Eide when seeking lines of credit with ACS, Westlake and URB.

5. By failing to disclose the Eide line of credit and any balance owed on that line of credit, JASON MICHAEL SIEMER made materially false representations of liabilities and overall net worth for himself and Siemer Auto Center, LLC, in the financial statements that were submitted to ACS, Westlake, and URB. By making these materially false and fraudulent representations on the financial statements, JASON MICHAEL SIEMER induced the victim companies ACS, Westlake, and URB to approve and renew lines of credit to Siemer Auto Center, LLC in amounts that the companies would not have approved or renewed if they had known about the undisclosed line of credit with Eide.

6. As part of the scheme to defraud, JASON MICHAEL SIEMER made and caused the materially false financial statements to be transmitted via wire communications that traveled in interstate commerce and web site transmissions that used the Internet, a means and facility of interstate and foreign commerce, to reach the victim companies ACS, Westlake, and URB in order to induce the floor plan lenders to approve lines of credit for Siemer Auto Center, LLC. These wire transmissions could not be completed successfully without the email communications traveling outside the state of Nebraska in interstate commerce before the victim lenders received the email communications from Siemer Auto Center, LLC.

7. As part of the scheme to defraud, JASON MICHAEL SIEMER used the proceeds of the credit lines obtained for Siemer Auto Center, LLC for various purposes. The defendant used some of the proceeds for personal enrichment. JASON MICHAEL SIEMER also purchased vehicles with floor plan loan proceeds that were never sold by Siemer Auto Center, LLC but were instead retained by the defendant for personal use or transferred to significant others in the defendant's life. Further, JASON MICHAEL SIEMER also used some of the credit line proceeds to pay off debts to other floor plan lenders without the consent or knowledge of the victim lenders.

8. As a further part of the scheme and artifice to defraud, JASON MICHAEL SIEMER instructed and directed employees of Siemer Auto Center, LLC to draft and transmit emails to Eide and URB that contained materially false representations in order to obtain and secure floor plan line of credit loan proceeds from these companies. The emails deceived Eide and URB into believing Siemer Auto Center, LLC was requesting loan proceeds to purchase specific vehicles at auctions when, in fact, Siemer Auto Center, LLC was not using the loan proceeds from these companies to purchase the vehicles specified in the emails. In fact, based on the material misrepresentations and false statements contained in the emails from employees of SIEMER

AUTO CENTER, LLC, made at the direction of JASON MICHAEL SIEMER, the victim floor plan lenders frequently extended loan proceeds to SIEMER AUTO CENTER, LLC for the purported purchase of the same vehicle. As a result, the same vehicle was often "double or triple" pledged as security for loans from two or three different floor plan lenders.

9. As a result of the scheme and artifice to defraud alleged herein, JASON MICHAEL SIEMER obtained Nine million Seven Hundred Thousand Dollars ($9,700,000) in lines of credit from the floor plan lending companies Eide, Westlake, ACS, and URB through the submission of false statements via wire transmissions and communications. Losses to the victim companies exceeded Three Million Dollars ($3,000,000).

## COUNTS I – XIII

10. Paragraphs 1 through 9 of this Indictment are re-alleged and incorporated as if fully set forth herein.

11. On or about the date set forth below, in the District of Nebraska, and elsewhere, JASON MICHAEL SIEMER, defendant herein, for the purpose of executing the scheme described above and attempting to do so, transmitted and caused to be transmitted by means of wire communications, in interstate commerce, the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Transaction Description |
|---|---|---|
| I | December 17, 2014 | Submission of Dealer Application via email to Westlake Flooring Services to obtain a $1,500,000 inventory finance loan. |
| II | May 29, 2015 | Wire Transfer of $1,618,956 from originator United Republic Bank, located in Nebraska, to Wells Fargo Bank for beneficiary Westlake Flooring Company, located in California. |
| III | October 28, 2015 | Email from Siemer Auto Center, LLC to Eide requesting loan proceeds of $21,220 for the purported purchase of a |

| | | |
|---|---|---|
| | | 2011 Nissan Titan with a Vehicle Identification Number (VIN) ending in 5850. |
| IV | October 29, 2015 | Email from Siemer Auto Center, LLC to United Republic Bank requesting loan proceeds of $21,220 for the purported purchase of a 2011 Nissan Titan with a VIN ending in 5850. |
| V | December 8, 2015 | Email from Siemer Auto Center, LLC to United Republic Bank to obtain loan proceeds of $16,725 for the purported purchase of a 2013 Dodge Durango with a VIN ending in 3919. |
| VI | December 8, 2015 | Email from Siemer Auto Center, LLC to Eide requesting loan proceeds of $16,725 for the purported purchase of 2013 Dodge Durango with a VIN ending in 3919. |
| VII | July 7, 2016 | Email from Siemer Auto Center, LLC to United Republic Bank requesting loan proceeds of $26,200 for the purported purchase of a 2013 Cadillac XTS with a VIN ending in 0390. |
| VIII | July 12, 2016 | Email from Siemer Auto Center, LLC to Eide requesting loan proceeds of $26,200 for the purported purchase of a 2013 Cadillac XTS with a VIN ending in 0390. |
| IX | July 20, 2016 | Email from Siemer Auto Center, LLC to United Republic Bank requesting loan proceeds of $18,570 for the purported purchase of a 2009 Cadillac Escalade with a VIN ending in 5541. |
| X | August 22, 2016 | Email from Siemer Auto Center, LLC to Eide requesting loan proceeds for the purported purchase of a 2009 Cadillac Escalade with a VIN ending in 5541. |
| XI | September 30, 2016 | Submission of Siemer Auto Center, LLC Financial Statements via salesforce.com to Automotive Capital Services to obtain a $5,000,000 floorplan line of credit. |
| XII | October 5, 2016 | Submission of "Request for Floorplan Credit Line" via salesforce.com to Automotive Capital Services to obtain a $5,000,000 floorplan line of credit. |
| XIII | November 22, 2016 | Wire Transfer of $436,950 originated by Automotive Capital Services, located in Texas, from BMO Harris Bank to United Republic Bank located in Nebraska. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT XIV

12.   Paragraphs 1 through 9 of this Indictment are re-alleged and incorporated as if fully set forth herein.

13. On or about April 21, 2015, in the District of Nebraska, JASON MICHAEL SIEMER, the defendant herein, knowingly made and caused to be made materially false statements for the purpose of influencing the action of United Republic Bank, a financial institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with an application, advance, loan and any change or extension of any of the same, by renewal, deferment of action or otherwise, in that the defendant JASON MICHAEL SIEMER made false statements in a Personal Financial Statement to United Republic Bank, Omaha Nebraska regarding the liabilities of JASON MICHAEL SIEMER and Siemer Auto Center, LLC, for the purpose of obtaining a loan from United Republic Bank, when in truth and in fact, as the defendant well knew, the true liabilities of JASON MICHAEL SIEMER and Siemer Auto Center LLC, greatly exceeded that reported on the Personal Financial Statement.

All in violation of Title 18, United States Code, Section 1014 and 2.

## COUNT XV

14. Paragraphs 1 through 9 of this Indictment are re-alleged and incorporated as if fully set forth herein.

15. On or about April 29, 2016, in the District of Nebraska, JASON MICHAEL SIEMER, the defendant herein, knowingly made and caused to be made materially false statements for the purpose of influencing the action of United Republic Bank, a financial institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with an application, advance, loan and any change or extension of any of the same, by renewal, deferment of action or otherwise, in that the defendant JASON MICHAEL SIEMER made false statements in a Personal Financial Statement to United Republic Bank, Omaha

Nebraska regarding the liabilities of JASON MICHAEL SIEMER and Siemer Auto Center, LLC, for the purpose of obtaining a renewal of a loan from United Republic Bank, when in truth and in fact, as the defendant well knew, the true liabilities of JASON MICHAEL SIEMER and Siemer Auto Center LLC, greatly exceeded that reported on the Personal Financial Statement.

All in violation of Title 18, United States Code, Section 1014 and 2.

## COUNT XVI

16. Paragraphs 1 through 9 of this Indictment are re-alleged and incorporated as if fully set forth herein.

17. On or about February 23, 2015, in the District of Nebraska, JASON MICHAEL SIEMER, defendant herein, did knowingly engage, cause and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, writing a check to pay for the purchase of a personal vehicle, namely a 1966 Chevrolet Corvette, with the funds from said check being withdrawn from a federally insured bank account in the amount of Thirty Eight Thousand Fifty Dollars ($38,050), such property having been derived from a specified unlawful activity, that is the wire fraud scheme alleged in Counts I through XIII.

All in violation of Title 18, United States Code, Sections 1957 and 2.

A TRUE BILL.

FOREPERSON

The United States of America requests that trial of this case be held in Lincoln, Nebraska, pursuant to the rules of this Court.

_____
STEVEN A. RUSSELL #16925
Assistant U.S. Attorney